IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ORION REFINING CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Bank. No. 03-11483 (MFW) |
| MICHAEL G. SYRACUSE d/b/a<br>INTERSTATE SUPPLY COMPANY,<br>and TEXAS ICO, INC.,<br><br>Appellants,<br><br>v.<br><br>ORION REFINING CORPORATION,<br><br>Appellee. | Adv. Pro. No. 03-53939<br><br>Civ. No. 10-249-SLR |

**MEMORANDUM ORDER**

At Wilmington this 30th day of March, 2011, having reviewed the papers submitted in connection with the above captioned appeal;

IT IS ORDERED that the appeal is denied and the February 5, 2010 decision of the bankruptcy court is affirmed, for the reasons that follow:

1. **Standard of Review.** This court has jurisdiction to hear an appeal from the bankruptcy court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a plenary standard to that court's legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). With

mixed questions of law and fact, the court must accept the bankruptcy court's "finding of historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the [bankruptcy] court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101-02 (3d Cir. 1981)). The district court's appellate responsibilities are further informed by the directive of the United States Court of Appeals for the Third Circuit, which effectively reviews on a de novo basis bankruptcy court opinions. *See In re Hechinger*, 298 F.3d 219, 224 (3d Cir. 2002) (citing *In re Telegroup*, 281 F.3d 133, 136 (3d Cir. 2002)).

2. **Background.** Appellee Orion Refining Corporation ("Orion") operated a crude oil refinery in Norco, Louisiana. On April 24, 2001, appellant Michael G. Syracuse ("Syracuse") and Orion entered into an agreement ("the Agreement") whereby Syracuse, identified in the Agreement as being in the business of "providing surplus material reclamation and clean-up services," agreed to remove surplus material from certain designated areas of the Norco facility, so that the areas could be graded and maintained without obstruction. (D.I. 15, Ex. D) Under the terms of the Agreement, Syracuse agreed to complete the work no later than March 31, 2002. (*Id.*) The Agreement was governed by Louisiana law. (*Id.*)

3. Syracuse filed an action for breach of contract and tortious conversion against Orion in Louisiana state court on May 24, 2002, alleging that Orion had sold the surplus material to Syracuse but would not allow Syracuse to access the remaining

2

surplus material. (D.I. 12 at 2) On May 13, 2003, Orion filed for bankruptcy protection and moved to sell all the assets of the Norco facility to Valero Energy Corporation and Valero Refining-New Orleans, LLC (collectively, "Valero"). (*Id.*) On June 19, 2003, Syracuse filed an adversary complaint and objected to the sale in the main bankruptcy proceeding based on his claim that he had title to the surplus material still located at the Norco facility. (D.I. 15 at 1) The parties agreed to allow the sale of the facility to go forward, subject to Orion's placing in escrow $1.5 million of the sale proceeds pending a determination of title to the surplus material. (D.I. 12 at 2-3)

4. On April 17, 2006, the bankruptcy court concluded that title to the surplus material had not passed to Syracuse before Orion filed for bankruptcy and granted Orion's motion for partial summary judgment in the adversary proceeding. (*Id.* at 3) Syracuse appealed the bankruptcy court's decision and, in its memorandum order dated April 9, 2008, this court granted the appeal, remanding the matter to the bankruptcy court for further proceedings. (*Id.* at 4) The bankruptcy court conducted a trial from June 16 to June 18, 2009 and issued its findings of fact and opinion on February 5, 2010, awarding Syracuse $156,342.87, plus interest, to remedy the conversion claim. (*Id.*) Currently pending before this court is Syracuse's appeal of the bankruptcy court's February 5, 2010 opinion.

5. **Analysis.** Syracuse appeals the bankruptcy court's February 5, 2010 ruling on three grounds, claiming that: (1) the bankruptcy court erred as a matter of law in applying the wrong standard for valuing the surplus material; (2) the bankruptcy court committed clear error in evaluating the surplus material as scrap; and (3) the bankruptcy

court erred as a matter of law in determining when legal interest commenced. For the following reasons, the court will deny Syracuse's appeal and uphold the bankruptcy court's opinion.

6. **Standard for valuing surplus material.** The court concludes that the bankruptcy court did not err as a matter of law in failing to assess the value of the surplus material under a replacement cost theory of recovery because Syracuse did not present the replacement cost theory of damages at trial. *See United States v. Dupree*, 617 F.3d 724, 727-28 (3d Cir. 2010). Under Louisiana law, the replacement cost approach requires determining the value of the property "by estimating the replacement or reproduction cost of the improvements; deducting therefrom the estimated depreciation; and then adding the market value of the land, if any." La. Rev. Stat. Ann. § 47:2323(c) (2009). Syracuse generically claims that he "put on evidence related to full value," but the court's review of the record reveals that Syracuse presented evidence only under a market approach, based upon the price Syracuse could realize by reselling the surplus material as a scrap and used equipment dealer. (D.I. 16 at 2-3; D.I. 1, Ex. 1 at ¶ 115-118; Ex. 2 at 11) The court finds nothing in the trial record to indicate that Syracuse produced evidence of replacement cost, and Syracuse points to none.

7. The court further concludes that the bankruptcy court did not err as a matter of law in determining that Syracuse failed to mitigate his damages. Specifically, the bankruptcy court found that Syracuse "failed to perform the Agreement in good faith by refusing to hire additional labor and cutting subcontractors when he knew that he did not have sufficient labor or equipment to complete the [timely] removal" of the surplus

4

material. (D.I. 1, Ex. 1 at ¶¶ 65-67, 77-80, 83-84, Ex. 2 at 23) The bankruptcy court considered Syracuse's allegations that Orion restricted Syracuse to one work area at a time and removed some of the surplus material that Syracuse had bought, as well as Syracuse's contention that the surplus material was contaminated. (*Id.*, Ex. 2 at 23) However, the bankruptcy court rejected each of these defenses on factual grounds, citing provisions from the Agreement and determining the credibility of the witnesses. (*Id.*, Ex. 2 at 23-27) The court concludes that the bankruptcy court did not err as a matter of law in determining that Syracuse failed to mitigate his damages because the facts establish that Orion's conduct did not prevent Syracuse from fully performing the Agreement.

8. Moreover, the court concludes that the bankruptcy court did not err as a matter of law in concluding that Syracuse may not collect damages related to the removal of certification tags from certain vessels. Again, the bankruptcy court's legal conclusion regarding Syracuse's failure to mitigate is based on well-supported factual determinations, including Orion's efforts to return all of the tags to Syracuse and its offers to reattach the tags to the vessels. (*Id.*, Ex. 1 at ¶¶ 175-76, Ex. 2 at 19) Syracuse's refusal to take any steps to reattach the tags supports the bankruptcy court's legal conclusion that Syracuse failed to mitigate his damages and, as a result, Syracuse may not receive damages under Louisiana law. *See* La. Civ. Code Ann. art. 2002 (2008) (a contracting party "must make reasonable efforts to mitigate" damages caused by another's breach of contract).

9. **Valuation of the surplus material as scrap.** Second, the court concludes that the bankruptcy court did not commit clear error in valuing the reusable surplus material as scrap. "It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1223 (3d Cir. 1995) (quoting *Hoots v. Pennsylvania*, 703 F.2d 722, 725 (3d Cir. 1985) (internal quotations omitted)). Based on a review of the factual record, the court finds substantial evidentiary support for the bankruptcy court's findings of fact.

10. Syracuse first contends that the bankruptcy court committed clear error by rejecting the Rosen Systems appraisal (the "Rosen Report") and the testimony of Mark Israel ("Israel"). The bankruptcy court found that the Rosen Report was not an accurate listing of the remaining surplus material because Israel evaluated only four of the seventeen designated areas, and Syracuse continued to sell surplus material after Israel's inspection, making it impossible to determine which surplus material actually remained on the premises after Syracuse was locked out of the premises. (D.I. 1, Ex. 1 at ¶¶ 89-90, Ex. 2 at 9) The bankruptcy court rejected Israel's opinions, not only because he was not a certified appraiser, but also because he lacked credibility in assessing the value of the remaining surplus material.[1] (*Id.*, Ex. 2 at 12)

---

[1] Specifically, the bankruptcy court found that Israel's valuation based on what a used equipment dealer could receive on resale over a period of five years was not consistent with the Agreement, which required that the surplus material be removed from the refinery within one year. (*Id.*, Ex. 1 at ¶¶ 115-16, Ex. 2 at 12) The bankruptcy

6

11. Syracuse further contends that the bankruptcy court committed clear error in accepting the testimony of Orion's expert, James Harden ("Harden"), after determining that Harden was a certified appraiser and an expert in the oil and gas field "with eminent qualifications." (*Id.*, Ex. 1 at ¶¶ 102-03, Ex. 2 at 13) The bankruptcy court found Harden's testimony convincing when he opined that Syracuse had already sold the most valuable material as replacement equipment, and all that remained was mere scrap. (*Id.*, Ex. 1 at ¶¶ 126-29, Ex. 2 at 14) The bankruptcy court considered and rejected Syracuse's claims that Orion and a third party offered to buy various pieces of large equipment for a total sum of $275,000, determining that the offers were "not competent evidence of the value of that equipment because the sales were never completed," and at least one piece of equipment was included in the Rosen Report for a value of only $5,000. (*Id.*, Ex. 1 at ¶¶ 123-25, Ex. 2 at 12)

12. Finally, Syracuse contends that the bankruptcy court committed clear error in accepting Orion's expert testimony regarding the valuation of the scrap metal. The bankruptcy court considered both Harden's and Allen Bradshaw's ("Bradshaw") determinations regarding the weight of the remaining surplus material, but ultimately credited the calculation by PSC Metals, Inc., a third party inspector, because it comported with the sum of the sales made by Syracuse and Valero. (*Id.*, Ex. 1 at ¶¶

---

court rejected Israel's valuation of the surplus material as usable equipment because the evidence presented at trial demonstrated that Syracuse was often only able to receive scrap value for the surplus material. (*Id.*, Ex. 1 at ¶¶ 73-76, 117-18, 121-22, Ex. 2 at 13) The bankruptcy court also found that Israel failed to consider the fact that the surplus material remaining on the premises included large equipment that would be prohibitively expensive to remove and store. (*Id.*, Ex. 1 at ¶¶ 28-29, 72, 116, Ex. 2 at 13)

132-33, 137-41, 145-47, Ex. 2 at 15-16) In determining the value of the scrap, the bankruptcy court subtracted a "quality suppliers" premium[2] from the price offered by Syracuse's expert, Richard Friederichsen ("Friederichsen"), to reach a net price for ferrous metals of $36.84 per gross ton. (*Id.*, Ex. 1 at ¶¶ 152-55, Ex. 2 at 17) With respect to the valuation of the non-ferrous scrap, the bankruptcy court considered the opinions of both parties' experts and credited the price that Friederichsen's company, Southern Scrap, paid for stainless steel scrap from Syracuse per gross ton during 2001 and 2002. (*Id.*, Ex. 1 at ¶¶ 162-66, Ex. 2 at 18)

13. In light of the bankruptcy court's well-reasoned assessment of the evidence before it, the court concludes that the bankruptcy court did not commit clear error by either crediting Harden's evidence or discrediting Syracuse's evidence.

14. **Commencement of legal interest.** Lastly, the court concludes that the bankruptcy court did not err as a matter of law in calculating the accrual of pre-judgment interest from the date the adversary action was filed rather than the date of the original judicial demand in Louisiana state court. Louisiana law provides that "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts." La. Rev. Stat. Ann. § 13:4203 (2006). A demand may be made by commencing a civil action in a court of competent jurisdiction. La. Code Civ. Proc. Ann. art. 421 (1999). If a case is dismissed for lack of jurisdiction and later brought in a court of competent jurisdiction, the date of the demand is calculated from the filing of the complaint in the court of competent

---

[2]Friederichsen admitted that Orion was not a "quality supplier." (*Id.*, Ex. 1 at ¶¶ 154-55)

jurisdiction. *See O'Brien v. Delta Gas, Inc.*, 441 So.2d 802, 802 (La. App. 4 Cir. 1983) (holding that legal interest on judgment in action commenced in state court after being dismissed for lack of jurisdiction by federal court ran from date suit was properly filed in state court rather than date of earlier filing in federal court).

15. The court concludes that the judicial demand in this action was brought on the date the adversary complaint was filed as opposed to the date the state court action commenced. Louisiana case law indicates that the date the demand was filed in the action resulting in the judgment controls. *See Nat'l Bldg. & Contracting Co., Inc. v. Alerion Bank & Trust Co.*, 832 So.2d 341, 343-44 (La. App. 4 Cir. 2002) (holding that interest runs from date state claim was filed because state court action was the one resulting in a judgment); *Merchant v. Montgomery Ward & Co.*, 83 So.2d 920, 925 (La. App. 1 Cir. 1955) (holding that "the interest in the present proceedings dates from judicial demand herein, not from judicial demand in the earlier federal proceedings between the same parties" where the earlier federal proceedings resulted in two mistrials). Therefore, the court concludes that the bankruptcy court properly calculated the pre-judgment interest from June 19, 2003, the date on which Syracuse filed his complaint in the adversary proceeding.

16. **Conclusion.** For the reasons explained, the bankruptcy court's decision is affirmed, and the appeal therefrom is denied.

United States District Court

9